## BERRIMAN v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5769.  Decided December 18, 1936.  (63 P. [2d] 282.)

**2**

*Geo. W. Worthen,* of Provo, for plaintiff.

*Joseph Chez,* Atty. Gen., and *F. A. Trottier,* of Salt Lake City, for defendants.

EPHRAIM HANSON, Justice.

In this proceeding we are asked to review the action of the Industrial Commission of Utah in denying the application of J. H. Berriman for an award. From the record it appears that on December 3, 1918, Berriman was in the employ of the Gemini Mining Company, an employer subject to the terms of our Workmen's Compensation Act (Rev. St. 1933, 42-1-1 et seq.). On that date, while he was drilling, a piece of rock flew and struck his left eye. On January, 8, 1919, he filed an application with the State Insurance Fund for compensation; the State Insurance Fund being the insurance carrier for the employer. The Insurance Fund, without any hearing before the Industrial Commission, recognized its liability and paid him compensation for the injury thus received.

Under date of March 19, 1935, Berriman filed with the Industrial Commission a claim for further compensation, alleging that his "left eye has recently become inflamed and flared up and as a result the right eye now has become industrially blind from the injury growing out of the accident for which compensation was heretofore awarded."

A hearing was had before the Industrial Commission on this second application. The only question of fact before the commission on such hearing was whether the blindness then existing in the applicant's right eye was caused by the injury received on December 3, 1918. The applicant and his medical experts contended that the condition of his right eye, which admittedly rendered it industrially blind at the time of the hearing, was due to sympathetic ophthalmia arising by natural processes from the injury to the left eye received in 1918.

Dr. H. G. Merrill attended Berriman when he received the original injury. His report shows that on December 6, 1918, he examined Berriman's left eye and found "traumatic iritis with extensive posterior synechia; pain and deep injection are extreme." Dr. Merrill then advised that the left eye be enucleated as "his good eye is in some danger, not great, but still definite, of a sympathetic ophthalmia." Instead of removing the eye, an operation was performed and the eye quieted down. Dr. Merrill then testified that he found no showing of any disease in the right eye until March 6, 1931, when he found the right eye showing symptoms of sympathetic ophthalmia. He treated the eye, but his vision gradually deteriorated. By November 23, 1934, there was a 95 per cent loss of vision, making Berriman industrially blind. Dr. Merrill was very definite in his opinion that the condition of the right eye was due to sympathetic ophthalmia as a direct result of the injury to the left eye in 1918. He testified that according to the best thought on the subject, the disease is transmitted from the injured eye to the other eye through the blood stream; that the disease may remain quiescent for several years without manifesting itself in any way. He further testified that the condition existing in Berriman's right eye was altogether too destructive to be due to iritis or ordinary uveitis and could only be due to sympathetic ophthalmia. The doctor came to his conclusions by observing the way Berriman sees, from examination with a slit lamp, and by microscope. The only way in which further information could be obtained would be to remove the eye and submit it to microscopic examination. The doctor gave an extended statement of the history of the case which may be summarized as follows: Applicant's left eye was injured December 3, 1918, and was treated by Dr. Merrill until the eye quieted down in October, 1919. After this, the left eye flared up several times, particularly in 1924, but the right eye showed no effects until in March, 1931. Applicant then reported that his injured eye had flared up two weeks previously. The right or good

eye was giving trouble, was sensitive to light and tender to touch. Shortly thereafter the iris was found to be stuck to the lens. According to Dr. Merrill this flaring up of the left eye, followed in two or three weeks by a flare-up in the right eye, and the loss of vision in the latter eye, is characteristic of sympathetic ophthalmia and forms the most important element indicating that that disease is present and has been operative. He further gave as a conclusion that it would be possible for sympathetic ophthalmia to entirely destroy the vision in the right eye without leaving any evidence of its presence or workings in the front of the eye so as to be discernible from an examination of the eye. Dr. Merrill was of the opinion that sympathetic ophthalmia was not present in 1924 or 1925 when he treated the other eye and was not present until in 1931.

Dr. B. W. Palmer examined the applicant on the day of the hearing at which he testified. He had studied the written history of the case kept by Dr. Merrill and examined the right eye under a slit lamp. In his opinion, from a consideration of the history and from the examination, the condition of the right eye was due to sympathetic ophthalmia.

Dr. Fred Stauffer also gave his opinion, based upon the written history made by Dr. Merrill and an examination of the eye, that applicant was suffering from sympathetic ophthalmia. He further testified that this disease acts so differently, depending on a variety of circumstances, that it is not possible to call any particular case a typical case. From his examination, however, he had every reason to believe that applicant's condition was due to sympathetic ophthalmia. He admitted that he might be mistaken as there could be no positive proof.

The State Insurance Fund had examinations made of the applicant's eyes, shortly before the hearing, by Dr. E. M. Neher and Dr. F. R. Slopanskey. Dr. Neher's testimony may be summarized as follows: While he could not say definitely that the condition of the right eye was the result of the injury to the left eye received in 1918, he was definitely

of the opinion that it was not. He saw no evidence in the right eye that would indicate that its condition was due to the injury to the left eye. The only way to be absolutely positive as to the source of the condition in the right eye would be to enucleate the left eye and have it examined by the pathological department of the Army Museum at Washington, D. C. A condition similar to the condition of applicant's right eye frequently occurs in people as they grow older and no definite cause can be given in the great majority of cases. Dr. Neher could not say what caused applicant's eye condition. He gave no weight to the history of the case, as the condition of the eye at the time of the examination was not such as would be found in sympathetic ophthalmia. The injury described by Dr. Merrill showing a "traumatic iritis with extensive posterior syncheia; pain and deep injection are extreme," might produce sympathetic ophthalmia, but applicant's condition did not show it.

Dr. Neher was withdrawn, and Dr. Merrill gave a full statement of the history of the case and his findings and the opinions of other doctors relative to different phases of sympathetic ophthalmia. After hearing this statement, Dr. Neher was nevertheless of the same opinion that the condition of the right eye was not due to sympathetic ophthalmia. In his written report of his examination, which is a part of the record, Dr. Neher stated that Berriman advised him that he (Berriman) had had no inflammation or irritation to light, redness or pain in either eye since his recovery from his injury in 1918. While this statement of Berriman became a factor in reaching the conclusion that the condition of the right eye was not due to sympathetic ophthalmia, yet it was not controlling, and even though Berriman had reported that the eye had become inflamed and sore and that he visited Dr. Merrill in 1931 and again in 1934, the conclusion would remain the same. Had he had sympathetic ophthalmia, he would have been under a doctor's care for weeks or months, and had the history indicated that disease, evidences of it would have been disclosed by the examination. Dr. Neher

came to the conclusion that this was not sympathetic ophthalmia because the tension of both eyes was normal or nearly so, the right eye was not soft, the color of the iris in the right eye was normal, and the crypts were normal. He did not think that sympathetic ophthalmia could affect the posterior eye without leaving discernible effects upon the iris.

Dr. Slopanskey testified that his examination of Berriman's eyes did not disclose the clinical picture of sympathetic ophthalmia. He heard Dr. Merrill's statement relative to the history of the case and the flare-up in 1931 and the conclusions of Dr. Merrill, but was of the opinion, nevertheless, that it was not sympathetic ophthalmia. His conclusion was based on finding the same eye conditions as testified to by Dr. Neher.

In addition to giving oral testimony, as above outlined, Drs. Neher and Slopanskey, prior to the time of the hearing, made and filed written reports of their examinations which were made a part of the record before the Commission. In his first report Dr. Neher states the condition of the right eye about as outlined above from his oral testimony. He says:

"In summary, the patient has had an old chronic iritis in his right eye which has plastered the iris down to the lens. The patient was very persistent in maintaining that he has had no inflammation or irritation to light, redness, or pain in either eye since his recovery from his injury in 1918. In the left eye the tension is high resulting in a glaucoma in this eye. His light perception is so faint and the scar tissue on his cornea is so dense that we know the left eye can never be of any service as a sight organ. In fact, it may be necessary for it to be enucleated in order to prevent the great amount of pain which usually later accompanies these glaucoma cases."

The doctor recommended a spinal Wasserman test and studies relative to possible chronic tuberculosis. If the left eye be enucleated it should be sent to the Army Museum at Washington, D. C., where a definite report could be obtained as to the possibility of the injury to the one eye affecting the other. This would be the only way to definitely establish whether the right eye was suffering from sympathetic ophthalmia.

In his second report, after additional study and examination of plaintiff's eyes, Dr. Neher made the following comment:

"We are unable to assign a definite cause for the iritis in the right eye. This is not unusual; in fact, it is the usual result. There are frequently cases of similar chronic iritis seen in men and women who give no history of injury to the eyes or definite cause of it. They may have some systemic or focal infection, but to prove a definite cause of the iritis is seldom possible. However, in my opinion the loss of vision in the right eye is not caused by or aggravated by the injury the patient gives the history of having received to his left eye in 1918."

His conclusions were based upon the following facts obtained from the history and the examination of the patient, together with the usual signs, symptoms and the pathology found in sympathetic ophthalmia; (1) infrequency. Here he shows that the disease is very rare. (2) Age of patient. Most cases are found in children under ten years of age, while the applicant is about 60 years of age. (3) "In case of sympathetic ophthalmia the patient gives the history of passing through the state of irritation and that is followed by the painful inflammatory state. Repeatedly Mr. Berriman stated that after recovery from his injury to the left eye in 1918, he had no pain or soreness in either eye up to his examination on April 6, 1935. His complaint was a gradual loss of vision in his right eye for the past two years. Examination showed his eyes to be quiet, apparently normal in size, tension normal in each eye, and crypts of iris were plain and distinct, failing to show that he had ever had any severe inflammatory condition on the inside of his eye. So both the history given by the patient, and the examination of the eyes are not those usually obtained from a patient suffering from sympathetic ophthalmia." In conclusion, he states:

"It is our best judgment that the loss of vision in Mr. Berriman's right eye is in no manner related to the alleged injury which occurred to the left eye in 1918."

Dr. Slopanskey's first report contains the following:

"In securing the history and eye symptoms, the patient claims there was no pain in either eye, during or since the beginning of failing vision in the good (right) eye (1931). This is remarkable. He also denied having any evidence of irritation in either eye, such as redness, dread of light, tearing, or eye fatigue. Aside from visual reduction there were no inflammatory signs in either eye, such as pain, injection or congestion or eye tenderness. * * * The right iris is light-blue in color and fairly good luster. Another significant feature is the preservation of the normal markings of the iris with no obliteration of the crypts. The red reflex of the right eye is visible but details within the interior cannot be seen due to exudates and lens sclerosis.

"In summary, I will state that in my opinion the inflammatory process is due to a low grade insidious Irido-Cyclitis, probably independent of the injured fellow left eye. The weight of the evidence is against sympathetic ophthalmia, certainly of a typical course, because of the absence of irritation and usual acute violence of the inflammatory painful stages. * * * This is a debatable question, as to causation, and only pathological examination of the removed eye could definitely solve the problem."

In his second report, after further examination, he states that nothing had developed in the right eye since his other examination to change his opinion and he still maintained that the right eye condition is probably not of sympathetic origin for the reasons previously given.

We have made a rather extensive statement of the evidence as it is strenuously urged by plaintiff that there is no substantial evidence to sustain the finding of the commission, which reads as follows:

"The Commission finds that the loss of vision of applicant's right eye was not caused or contributed to by the accidental injury of December 3, 1918, and was not caused by sympathetic ophthalmia."

Plaintiff contends that the written reports of Drs. Neher and Slopanskey, above referred to, tend to contradict and nullify the effect of their oral testimony because they are not as positive in their reports that the eye was not suffering from sympathetic ophthalmia as they were in their oral

testimony, and also because they seemed to attach a good deal of weight, in their reports, to the statement of Berriman that he had had no pain or irritation in his right eye since recovering from the injury in 1918, whereas, in their oral testimony they ascribed no weight to his history. Plaintiff further contends that the statements of Berriman to these doctors were incompetent as hearsay, such statements having been made, not for the purpose of receiving treatment, but for the purpose of enabling the doctors to testify at the hearing. By such procedure plaintiff arrives at the conclusion that both the written reports and the oral testimony of these doctors should be rejected. He then urges that the finding, above quoted stands wholly unsupported by the evidence.

When a finding of the Industrial Commission is attacked and we are asked to annul the decision made thereon, we are always confronted with the problem of giving effect to the statutory provision which provides that the "findings and conclusions of the commission on questions of fact shall be conclusive and final and shall not be subject to review," and at the same time making such an examination of, and drawing such conclusions from, the facts in the case as will determine the issue raised by the writ of review. At best, we can only be guided by principles. In this particular field of inquiry this court has so often stated these principles and in such varied form that it would serve no useful purpose to attempt a new statement. Two of the latest cases bearing on this question are *Roberts* v. *Industrial Commission,* 87 Utah 10, 47 P. (2d) 1052, and *Kent* v. *Industrial Commission,* 89 Utah 381, 57 P. (2d) 724, 726. In the former case we said:

"We can review the evidence only for the purpose of determining whether there is some substantial evidence to sustain the commission's findings. * * * We cannot weigh conflicting evidence or control the commission in its decision with respect thereto. The commission is the trier of the facts, and its decision thereon must stand, if supported by any substantial evidence. The evidence in this case

is not such that we can hold, as a matter of law, that the commission's finding are unsupported."

In the latter case we said:

"When we are asked to overturn the findings and conclusions of the commission denying compensation, it must be made clearly to appear that the commission acted wholly without cause in rejecting or in refusing to believe or give effect to the evidence. It was not intended by the Workmen's Compensation Act (Rev. St. 1933, 42-1-1 et seq.) that this court, in matters of evidence, should to any extent substitute the judgment of the court upon factual matters for the judgment of the commission."

It is clear that there was a direct conflict in the testimony of the experts who testified as to the cause of the loss of sight in plaintiff's right eye. This conflict exists though it be conceded that Berriman's statements to Drs. Neher and Slopanskey as to his previous eye condition are regarded as hearsay and incompetent. Drs. Neher and Slopanskey heard, at the hearing, Dr. Merrill give a complete and, according to plaintiff's contention, true statement of the history of the condition of plaintiff's eyes. Notwithstanding such history, they still were of the opinion that the condition of the right eye was not caused by the injury to the left eye. So it cannot be said that their opinions were based on a premise supported only by incompetent hearsay evidence or upon a history contrary to the true facts. Under such circumstances it is not necessary to decide whether the statements of plaintiff to these doctors during their examination of him were hearsay and incompetent.

Whether there was such contradiction and change of testimony in the evidence given by Drs. Neher and Slopanskey as would render their evidence unworthy of belief was a matter, under the record of this case, to be decided by the commission and not by us. We fail to see such serious contradiction or change in the testimony of these doctors as would render capricious, arbitrary, and unwarranted, using the language of plaintiff, the action of the commission in giving effect to their opinions rather than

the opinions of the doctors testifying in plaintiff's behalf. Though the weight of the evidence may be against the finding, yet it cannot be said that the finding, in view of all the testimony and evidence above outlined, stands without the support of some substantial evidence. Under such circumstances we cannot interfere with the findings made by the commission.

Plaintiff has also attacked a finding of the commission that his right to an award has been lost through lapse of time. Since the decision of the commission in denying the award upon the finding that the condition of the right eye was not caused or contributed to by the injury to the left eye and was not caused by sympathetic ophthalmia must be affirmed for the reasons stated, the question of whether plaintiff has lost any rights by lapse of time need not be discussed or decided and we refrain from expressing any opinion on that question.

The decision of the Industrial Commission is affirmed, with costs to defendants.

ELIAS HANSEN, C. J., and FOLLAND, MOFFAT, and WOLFE, JJ., concur.